United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Byoplanet International, Inc., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 17-60044-Civ-Scola |
| ) | |
| Vistek, Inc., Prozone Water ) | |
| Products, Inc., and Ronald L. ) | |
| Barnes, Defendants. ) | |

## **Order Denying Motion to Dismiss**

The parties in this case quarrel over whether Alabama Defendants Vistek, Inc., Prozone Water Products, Inc., and Ronald L. Barnes have sufficient connections to Florida such that this Court may exercise personal jurisdiction over them. After careful consideration, the Court finds the Defendants' contacts with Florida satisfy both Florida's long-arm statute as well as traditional notions of fair play and substantial justice such that this suit may be maintained in Florida. The Court thus **denies** the Defendants' motion to dismiss or, in the alternative, their motion to transfer venue (**ECF No. 8**.)

**1. Background**

Plaintiff ByoPlanet International, Inc. is a Florida company that describes itself as "an industry leader in the creation and manufacture of advanced induction charged mechanical delivery units." (Compl. at ¶ 1, ECF No. 1-1, 16.) In more basic terms, it appears ByoPlanet is in the business of developing systems that efficiently and effectively apply disinfectants to various surfaces on, for example, cruise ships and airplanes. (*See e.g.*, "Royal Caribbean's battle with norovirus: Extends contract with ByoPlanet International," Composite Ex. 4, Pl.'s Resp., ECF No. 19-4, 3.) Defendants Vistek and Prozone, on the other hand, are Alabama companies. According to ByoPlanet, Vistek specializes in the research and development of the use of ultra-violet light (Compl. at ¶ 2) and Prozone manufactures pool-cleaning hardware (*id.* at ¶ 3). Defendant Barnes is the CEO of both Vistek and Prozone as well as the chief engineer at Prozone. (Defs.' Mot. at ¶ 3.)

It appears that the parties' involvement with one another began when a ByoPlanet employee began ordering and using components from Prozone,

unbeknownst to ByoPlanet's management. (Rick O'Shea Aff. at ¶ 8, Ex. 1, Pl.'s Resp., ECF No. 19-1, 2.) Once the Prozone purchases were discovered, Rick O'Shea, ByoPlanet's president and CEO contacted Prozone. (*Id.* at ¶ 9.) Out of this initial contact, a dialog developed between O'Shea and agents of both Prozone and Vistek, specifically Barnes and his daughter, Cherie Brook, who is also the secretary of Vistek and president of Prozone. (*Id.* at ¶ 10; Defs.' Mot. at ¶ 4.) As many telephone calls and emails were exchanged over the course of several months, the parties endeavored to collaborate by bringing together their areas of expertise to further perfect ByoPlanet's disinfectant applications. (O'Shea Aff. at ¶ 10–13.) Through these preliminary talks, the parties also exchanged product samples, demo units, and prototypes. (*Id.* at ¶¶ 13, 18.) During this time, the parties also met face-to-face on a number of occasions, although never in Florida. (Brook Aff. at ¶¶ 5, 7, 8, 10, 11, Ex. A, Defs.' Mot., ECF No. 8, 19–20.) Ultimately, after many discussions, ByoPlanet and Vistek executed a "Letter of Understanding," in early September 2014, wherein the parties agreed to team up to develop an "ozonated back pack" capable of applying a powerful disinfectant to multiple substrates. (*Id.* at ¶ 33; Agmt., Ex. 1, Compl., ECF No. 1-1, 35.) In accordance with this agreement, ByoPlanet provided the Defendants an "initial developmental retainer of $50,000." (O'Shea Aff. at ¶ 32; Agmt. at 1.) A few weeks after executing the agreement, ByoPlanet also sent Prozone $40,000 worth of surplus components, with the understanding that this value would be applied to the terms of the parties' contract as a credit. (Compl. at ¶ 19–21.) Separate and apart from the written agreement, ByoPlanet also purchased "air machines" from Prozone that it then sold to its existing clients in Florida. (O'Shea Aff. at ¶ 33.)

According to the complaint, the Defendants became uncommunicative and unavailable almost immediately upon the receipt of the $50,000 retainer. (Compl. at ¶ 22.) ByoPlanet alleges the Defendants breached the contract by failing to provide either the required weekly status updates or the specified initial design specifications (count 4). In addition to this breach of contract claim, ByoPlanet also alleges: Barnes fraudulently induced it into entering into the agreement (count 1); Barnes and Vistek negligently made various false material representations (counts 2 and 3); Prozone was unjustly enriched by its receipt of the surplus components (count 5); Vistek and Prozone converted certain equipment that rightfully belongs to ByoPlanet (counts 6 and 7); and Prozone's retention of the surplus goods and Vistek's retention of the $50,000 retainer amount to civil theft (counts 8 and 9). Additionally, ByoPlanet contends Vistek, Prozone, and Barnes all operate as one another's alter egos, without respect to

corporate forms, and that they should be all treated as one for the purposes of this case. (Compl. at ¶¶ 7–8.)

Accepting ByoPlanet's contention, solely for the purposes of its motion to dismiss, that all three Defendants may be treated as one, the Defendants nonetheless contend the Court lacks personal jurisdiction over them and should therefore dismiss the complaint. (Defs.' Mot. at 2.) Alternatively, the Defendants argue that this case should be transferred to the Northern District of Alabama. (*Id.* at 6.)

### 2. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011). To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendants. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendants' affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendants sustain their burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The plaintiff must do more than "merely reiterate the factual allegations in the complaint." *Id.* (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)). Where the evidence conflicts, however, the district court must construe all reasonable inferences in favor of the plaintiff. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." *Id.*

"Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324. First, the court must determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today*, 218 F.3d at 1249. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998); *see also*

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324; *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

### 3. The Defendants are subject to the Court's personal jurisdiction.

The Defendants challenge the Court's personal jurisdiction over them, arguing (1) ByoPlanet has not set forth facts that trigger Florida's long-arm statute; and (2) the exercise of jurisdiction over the Defendants would not comport with the requirements of due process or traditional notions of fair play and substantial justice. ByoPlanet opposes the Defendants' motion, arguing that personal jurisdiction over them does comport with due process and that the Defendants have triggered Florida's long-arm statute by: (1) breaching an agreement in Florida; (2) engaging in a business or business venture in Florida; (3) committing a tortious act within Florida; and (4) causing injury to persons or property in Florida arising out of an act or omission by the Defendants both outside and inside the state.[1] In the end, the Court finds ByoPlanet has sufficiently demonstrated the applicability of Florida's long-arm statute to the Defendants' activities and exercising jurisdiction over the Defendants in this case would comport with the requirements of due process and traditional notions of fair play and substantial justice.

### A. ByoPlanet has sufficiently set forth allegations showing that the Defendants breached an agreement within Florida.

In considering the first step of the personal-jurisdiction inquiry, the Court must determine whether the Defendants' activities meet any of the enumerated acts or activities listed Florida Statute section 48.193(1). One of those enumerated acts is "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(a)7. In determining whether the Defendants' activities trigger personal jurisdiction under section 7, the Court examines two criteria: (1) whether the agreement at

---

[1] In addition to these specific bases for personal jurisdiction, ByoPlanet also alleges general jurisdiction, in its complaint, submitting that the Defendants have engaged in substantial and not isolated activity in Florida as set forth under Florida Statutes § 48.193(1)(b). (Compl. at ¶ 6.) The Court does not find ByoPlanet to have adequately alleged personal jurisdiction on this basis. Further, ByoPlanet does not address this ground in its opposition to the Defendant's motion and the Court therefore deems ByoPlanet to have abandoned any argument supporting general jurisdiction.

issue here required the Defendants to perform acts in Florida; and (2) whether the Defendants failed to perform any of those acts. *See id.*

The contract between ByoPlanet and Vistek, captioned a "Letter of Understanding," sets forth its purpose as: "defin[ing] the expectations of both parties during the developmental stage of this project which will begin on September 1, 2014." (Agmt, Compl., Ex. 1, ECF N. 1-1, 35.) Within the agreement, Barnes acknowledged that he was to "provide [ByoPlanet] with weekly updates via telephone or email on the progress of [the] project to Randall Holloway[2] or Rick O'Shea." (*Id.*) The agreement also provided that Barnes would "record his billable R&D hours" and make further "cash requests," on top of ByoPlanet's initial payment of $50,000, "in blocks of $25,000 per request up to an additional $50,000 in funds." (*Id.*) Finally, according to the agreement, Vistek was to "provide a preliminary design specification outline with intended use with [ByoPlanet's] back pack system by November 1, 2014." (*Id.*)

According to O'Shea, in an affidavit submitted in support of ByoPlanet's opposition to the Defendants' motion, Vistek provided "virtually no updates, billing invoices, or initial plans." (O'Shea Aff. at ¶ 37, Ex. 1, ECF No. 19-1, 9.) Further, the Defendants failed to provide the required preliminary design specification by the November deadline; in fact, ByoPlanet has never received it. (*Id.* at ¶¶ 41–42.) ByoPlanet also never received a single invoice reflecting Barnes' billable R&D hours. (*Id.* at ¶42.) Similarly, as Brandon Wells, ByoPlanet's director of product development explained, also in affidavit supporting ByoPlanet's opposition, Vistek was supposed to provide updates to ByoPlanet, in Florida, regarding its progress and never did. (Wells Aff. at ¶ 14, Ex. 2, ECF No. 19-2, 3.) According to Wells, on December 1, 2014, representatives of the Defendants admitted to him that they "couldn't perform under the contract and that the backpack project was nowhere near ready." (*Id.* at ¶ 21.) Wells also, in accord with O'Shea, confirmed that ByoPlanet was "never provided with schematics or a preliminary design for the backpack unit" or "with a single invoice for the project." (*Id.*)

At least for the purposes of this jurisdictional analysis, the Defendants do not object to ByoPlanet's characterization of the parties' relationship or the Defendants' failure to comply with the terms of the agreement. Instead, the Defendants insist that ByoPlanet's complaint fails to allege that the Defendants' performance was due in Florida. While the Court agrees that neither the complaint nor the parties' agreement explicitly specifies that the Defendants'

---

[2] The Defendants describe Holloway as "a principal investor and owner of ByoPlanet." (Defs.' Mot. at 3.)

performance is required in Florida, the inference, combined with O'Shea and Wells' affidavits, is inescapable: the address listed for Byoplanet in the agreement is in Sunrise, Florida; the complaint identifies Byoplanet as a Florida corporation; and the civil theft and demand letter sent to the Defendants issued from a Florida attorney, citing Florida statutes, and referencing equipment the Defendants have allegedly wrongfully withheld from ByoPlanet, in Florida. The reasonable inference from the complaint and its exhibits is that the Defendants were to provide their deliverables to ByoPlanet in Florida. *See Betzoldt v. Auto Club Grp. Ins. Co.*, 124 So. 3d 402, 404 (Fla. 2d DCA 2013) (noting that the court "must assume that all of the facts alleged are true and draw all reasonable inferences in favor of the pleader") (quoting *C & J Sapp Pub'g Co. v. Tandy Corp.*, 585 So. 2d 290, 292 (Fla. 2d DCA 1991).

This does not mean that the Defendants had to physically enter the state to comply with the terms of the contract; but it appears from the complaint that the expectation was that the Defendants' updates, invoices, cash requests, and design specification would be communicated to ByoPlanet, in Florida, via telephone, mail, or email. And, it appears that, in fact, the parties primarily communicated over the telephone and through email, while representatives from ByoPlanet were in Florida. The complaint does not mention ByoPlanet having a significant presence in any other state. It would be unreasonable to infer that the Defendants' performance was due anywhere other than Florida, ByoPlanet's principal place of business. *Cf. Unger v. Publisher Entry Serv., Inc.*, 513 So. 2d 674, 676 (Fla. 5th DCA 1987) (noting that even where the place of payment of a debt is not specified, "the legal presumption that a debt is to be paid at the creditor's place of business 'is sufficient to satisfy the language of Florida's long-arm provision that refers to contractual acts "required" to be performed in Florida'") (quoting *Kane v. American Bank of Merritt Island*, 449 So. 2d 974, 975 (Fla. 5th DCA 1984); *see also Tallmadge v. Mortgage Fin. Group, Inc.*, 625 So.2d 1313 (Fla. 4th DCA 1993) (requirements of long-arm statute met where Florida mortgage broker obtained refinancing of a mortgage on a California property and closing was held in California, but commission agreement as well as all loan documents, correspondence, and checks were sent to broker's Florida office). Thus, as a starting point, the Court finds the complaint sufficiently alleges that the parties' agreement required the Defendants' performance in Florida.

And, in fact, the Defendants' own reply bears this out. Indeed, the Defendants ultimately do not dispute ByoPlanet's response that "each of [the agreement's] requirements inherently must be sent to Florida because Byoplanet exists and is a creature of Florida." (Pl.'s Resp. at 17; Defs.' Reply at 3.) Instead,

the Defendants argue that since the complaint alleges they failed to actually make any of these required communications, the complaint therefore neglects to sufficiently allege personal jurisdiction. This is not, however, what the statute requires. Instead, it only requires that the Defendants "fail[ed] to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(a)7.

The Court thus concludes the complaint sufficiently alleges facts establishing that the reach of section 7 extends to the Defendants. The Defendants did not otherwise challenge jurisdiction on this basis, declining to present facts that might rebut ByoPlanet's prima facie showing. ByoPlanet's complaint allegations therefore suffice.

### B. ByoPlanet has additionally satisfactorily set forth allegations showing that the Defendants engaged in a business or business venture in Florida.

Another one of the enumerated activities that can trigger jurisdiction under Florida's long-arm statute is "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state." Fla. Stat. § 48.193(1)(a)1. "In order to establish that a defendant was carrying on a business or business venture in the state, either itself or through an agent, '[t]he activities of the [defendant] . . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit.'" *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (quoting *Dinsmore v. Martin Blumenthal Associates, Inc.,* 314 So.2d 561, 564 (Fla. 1975)). The entirety of the Defendants' argument, in their motion to dismiss, regarding whether ByoPlanet has established jurisdiction under section 1 is that ByoPlanet has "not alleged (and cannot truthfully allege) any facts suggesting that any of the Defendants 'operate or engage in' business or maintain an office in the State of Florida." (Defs.' Mot. 7–8.) As an initial matter, the bare allegations of ByoPlanet's complaint, that the "Defendants have been operating, conducting, engaging in, or carrying on a business or business venture in this state," combined with the described business relationship and interactions between the parties, are enough to establish a prima facie showing that section 1 of Florida's long-arm statute has been triggered.

To the extent the Defendants' factual allegations are enough to sustain their burden of challenging the complaint's allegations, ByoPlanet has itself come forward with enough evidence to overcome this showing. To begin with, the Letter of Understanding between the parties establishes the Defendants' intent to explore a long-term business relationship with ByoPlanet, a Florida company.

Further, O'Shea's description of receiving, in Florida, at least fifty phone calls and one hundred emails from the Defendants—communications that ultimately led to the agreement between the parties—was left unrebutted. (O'Shea Aff. at ¶ 12.) The emails attached to O'Shea's affidavit also show detailed, extensive, and ongoing communications, related to various allegations in the complaint, between the Defendants and representatives of ByoPlanet who were all located within Florida. (*E.g.*, *id.* at ¶¶ 12, 14, 16, 24.) Further, according to O'Shea's affidavit, ByoPlanet made it clear to the Defendants that its primary focus was developing technology that would enable it to capitalize on cruise-ship related business, and other businesses, within Florida. (*E.g.*, *id.* at ¶¶ 10, 13, 17, 22, 25, 35, 36, 39.) According to O'Shea, Brook, asked to meet him in Florida, while she would be in Orlando attending a trade show, to discuss the status of the parties' project. (*Id.* at ¶ 40.) During that meeting, O'Shea recounted, Brook promised that, despite various deficiencies, the project would progress. (*Id.* at ¶ 41.) Additionally, prior to the execution of the parties' agreement, the Defendants had supplied components to a ByoPlanet employee who was then using that component in the manufacture of products that ByoPlanet then sold in Florida. (*Id.* at ¶ 8.) It was this relationship that led the CEO of ByoPlanet to explore other business opportunities, focused on Florida markets, with the Defendants. (*E.g., id.* at ¶¶ 9, 15.) The parties also exchanged goods, with the Defendants sending demo units (*id.* at ¶ 13), for example, to ByoPlanet, in Florida, and ByoPlanet shipping various components and prototypes, from Florida, to the Defendants (*id.* at ¶ 34).

While many of the factors often looked to in determining whether a party is "operating, conducting, engaging in, or carrying on a business or business venture" in Florida are absent here, the Court does not find this fatal to the Defendants' activities satisfying section 1's criteria. This is not a case where a defendant was involved with an isolated business transaction, narrowly circumscribed as to time and scope. Instead, ByoPlanet has presented evidence that the parties intended to embark on an ongoing "collaboration . . . beyond the roles of supplier and consumer." (*Id.* at 10; *see also id* at ¶¶ 15 (describing a "collaborating synergy between ByoPlanet and Vistek/Prozone"), 22 (recounting emails and calls between the parties discussing "the various ways that Prozone, Vistek and ByoPlanet could distribute products in Florida"), 50 ("It was Vistek, Prozone, and ByoPlanet's intent to sell the private label air machines in Florida to Florida customers."); Wells Aff. at ¶¶ 24–25 (noting that the Defendants were well aware that the end product was being developed "to sell in vertical transportation markets in Florida.").) The parties' relationship was so involved

that ByoPlanet, at the Defendants' request, agreed to an exclusivity agreement whereby ByoPlanet agreed to work solely with the Defendants as to its "ozone related products." (O'Shea Aff. at ¶ 24.) Moreover, O'Shea pointedly noted that the Defendants "wanted more information on [ByoPlanet's] ideas so they could work with [ByoPlanet] on expanding market share in Florida." (*Id.* at ¶ 25.) Thus despite the absence of an office in Florida; a license to do business in Florida; a large number of clients in Florida; or an indication of the Defendants' overall revenue gleaned from Florida clients, the Court nonetheless finds the Defendants' business connections sufficiently involved with Florida as to trigger section 1. *Compare, e.g.*, *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, No. 2D16-4204, 2017 WL 3441264, at *5 (Fla. 2d DCA Aug. 11, 2017) ("Factors to consider" in evaluating jurisdiction under section 1 of Florida's long-arm statute "include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients.") (quotations omitted) *with Intego Software, LLC v. Concept Dev., Inc.*, 198 So. 3d 887, 893 (Fla. 1st DCA 2016) (noting that Florida courts have found "that long-arm jurisdiction will exist when a non-resident defendant procures business in Florida, even if the procurement resulted from only sporadic attempts to obtain business in Florida") *and Naviera Mayaca Exp. S. de R.L. v. Brauer & Assocs., Inc.*, 559 So. 2d 1230, 1230–31 (Fla. 3d DCA 1990) (finding a defendant's "extensive business correspondence" with a Florida plaintiff, including only one in-person visit from the defendant's agent to renew an insurance policy, sufficient to establish personal jurisdiction under section 1).

Based on the record evidence, including the allegations in the complaint, the affidavits submitted by the parties as well as the email correspondence attached to O'Shea's affidavit, and the written agreement between the parties, the Court is satisfied that jurisdiction under section 1, in addition to section 7, of Florida's long-arm statute is triggered.

### C. ByoPlanet's other jurisdictional allegations are unavailing.

ByoPlanet also argues that Florida's long-arm statute is satisfied because the Defendants have (1) committed a tortious act within Florida; and (2) caused injury to persons or property within Florida arising out of actions taken by the Defendants outside of Florida. The Court finds the allegations in the complaint insufficient to properly allege jurisdiction on either of these bases. Nonetheless, "[i]f the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose

from the same jurisdiction generating event." *Brennan v. Roman Catholic Diocese of Syracuse New York, Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009). Since the Court finds that all of ByoPlanet's claims—including its claims for fraud,[3] negligent misrepresentation, unjust enrichment, conversion, and civil theft against—arise out of either its breach of contact claim or its business dealings within Florida, the Court has personal jurisdiction over the entire case.

### D. The Court's exercise of jurisdiction over the Defendants comports with the requirements of due process.

"The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009). The United States Supreme Court has "upheld the assertion of jurisdiction over defendants who have purposefully 'reached out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985).

The Defendants maintain they "simply do not have the necessary minimum contacts with Florida" to justify jurisdiction. In support they submit: (1) the "Defendants **never** went or sent any agents to Florida for any discussions or negotiations with ByoPlanet regarding the [Letter of Understanding]"; (2) the "Defendants performed all work and tasks pursuant to and related to the LOU in Huntsville, Alabama"; (3) "the LOU did not require Defendants to perform any act in Florida"; (4) "[n]one of the Defendants made any representations in Florida to any person related to the proposed projects or the LOU, whether with respect to its negotiation, its execution or its performance"; (5) the "Defendants simply did not undertake any activity in Florida related to the proposed projects, the LOU or

---

[3] The Defendants raise for the first time in their reply, and only in a footnote, that ByoPlanet's fraud count does not satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. The Defendants appear to present this argument only in passing and in a wholly cursory manner. Because of this, and because the argument is mentioned only in reply, the Court declines to assess its merits. *See Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("The premise of our adversarial system is that . . . courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

the Products"; and (6) "[n]one of the Defendants are citizens of Florida; maintain a place of business in Florida; and/or maintain any agents or employees in Florida." (Defs.' Mot. at 10–11 (emphasis in original).)

To begin with, the Defendants' contention that they were "**never**" involved with any discussions or negotiations in Florida with ByoPlanet regarding the parties' agreement, is directly controverted by ByoPlanet. In support, O'Shea provided an October 2014 email from Brook wherein she expressed hope that the parties could all meet the following week, in Orlando, Florida, since they would all be there for trade shows anyway, to "discuss the program." (Pl.'s Resp., Ex. 1, ECF No. 19-1, 42.) Several weeks later, Brook sent another email to O'Shea, referring to the parties' meeting in Orlando: "Along the lines of budgeting, and pursuant to our discussion at the show, we are requesting a status for the second $50,000 payment." (*Id.* at 26.) Since, a district court must construe all reasonable inferences in favor of the plaintiff where there is conflicting evidence, *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010), ByoPlanet's rebuttal is more than sufficient to controvert the Defendants' assertion that it "**never** went or sent any agents to Florida for any discussions or negotiation with ByoPlanet" regarding their agreement.

In any event, although a defendant's physical entry into the forum state is certainly relevant, its physical presence is by no means a prerequisite to jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). And thus the Defendants' nearly singular focus on their lack of a physical presence in Florida misses the mark. As explained by the United States Supreme Court, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Even in 1985 the Court recognized that that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). This is true even more so now, with the integration of email and other forms of electronic communication into the mix. Thus, in directing the Court's attention to the work that the Defendants did in Alabama, the Defendants neglect to recognize that these efforts, recounted above in detail, were nonetheless "purposefully directed" to and received by Florida residents, while those residents where in Florida. Furthermore, as set forth by ByoPlanet, the

Defendants were aware that those efforts were to support the parties' joint goal of expanding their businesses' reach throughout Florida. (O'Shea Aff. at ¶ 25 (noting that the Defendants "wanted more information on [ByoPlanet's] ideas so they could work with [ByoPlanet] on expanding market share in Florida").)

Lastly, the Defendants' focus the Defendants' lack of Florida citizenship and either offices or employees in Florida also fails to connect. "[T]he determination of whether long-arm jurisdiction exists does not turn on a defendant's providing a list of ways it is *not* active in Florida, or a list of ways the plaintiff is active in another jurisdiction." *Intego Software, LLC v. Concept Dev., Inc.*, 198 So. 3d 887, 893 (Fla. 1st DCA 2016). Again, in focusing on the contacts it doesn't have, the Defendants fail to properly acknowledge or address the contacts they do have.

Ultimately, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 134 S. Ct. 1115, 1123, 188 L. Ed. 2d 12 (2014) (quoting *Burger King,* 471 U.S. at 475). In evaluating the minimum-contacts considerations, the Court must determine: (1) whether ByoPlanet's causes of action arise out of the activities of which the Defendants purposely availed themselves ("i.e., the contacts must proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state"); (2) whether the Defendants purposefully availed themselves of the privilege of doing business in Florida, thereby invoking the benefits and protections of its laws; and (3) whether it was reasonably foreseeable for the Defendants to "anticipate being haled into court" in Florida. *Future Tech.*, 218 F.3d at 1250 (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985)) (other citations omitted) (emphasis in original); *see also Sculptchair*, 94 F.3d at 631. After careful consideration, the Court finds the Defendants' activities within Florida are significant enough to establish minimum contacts and that these minimum contacts relate to the allegations set forth in the complaint.

"Once it has been determined that sufficient minimum contacts with the forum exist, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Cronin v. Washington Nat. Ins. Co.*, 980 F.2d 663, 670–71 (11th Cir. 1993) (quotations omitted). These factors include: "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most

efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies." *Id.* at 671. Of course Florida's interest in resolving disputes involving a contract implicating the development and sale of products intended to be sold primarily in Florida, and various torts alleged to have damaged a Florida citizen, is substantial. Obviously ByoPlanet's interest in obtaining relief is substantial as well. And although the inconvenience to the Defendants of having to litigate in Florida is "not insignificant, [it] does not outweigh the factors that mitigate in favor of the [Court's] exertion of personal jurisdiction." *Id.*

In short, the Defendants "deliberately [] engaged in significant activities within a State or ha[ve] created continuing obligations between [themselves] and residents of the forum," *Burger King*, 471 U.S. at 475–76, such that it was reasonably foreseeable that they would be haled into court here.

### 4. ByoPlanet's selected venue is proper.

The Defendants insist that venue in this Court is improper because "the events and/or omissions giving rise to ByoPlanet's claims occurred entirely in the Northern District of Alabama." (Defs.' Mot. at 13.) As forth in detail above, the Court disagrees with the Defendants' characterization.

Having found that personal jurisdiction exists in this district as to all of the Defendants, venue is proper in this district. *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994) ("The venue issue is subsumed in the personal jurisdiction issue"). Further, the convenience of the parties and witnesses and the interest of justice do not warrant the transfer of this case to the Northern District of Alabama.

### 5. Conclusion

For the foregoing reasons, the Court **denies** the Defendants' motion to dismiss or, in the alternative, to transfer (**ECF No. 8**).

**Done and ordered**, at Miami, Florida, on October 18, 2017.

Robert N. Scola, Jr.
United States District Judge